# United States District Court
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT MAURY, | ) | |
| | ) | |
| Petitioner, | ) | No. 1:17-cv-00486 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| RANDY PFISTER, WARDEN, | ) | |
| STATEVILLE CORRECTIONAL CENTER, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Robert Maury filed this amended petition for a writ of habeas corpus under 28 U.S.C. § 2254.[1] *See* R. 9, Am. Habeas Pet. at 1.[2] He challenges his 2011 Illinois state conviction on two counts of predatory criminal sexual assault. *See id.* For the reasons discussed, this Court denies Maury's petition and declines to issue a certificate of appealability.

## I. Background

In reviewing a petition for habeas corpus under § 2254, a federal court must presume that the factual findings of the state court that decided the merits of the case are correct. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815

---

[1]At one point in his reply brief, Maury appears to characterize his petition under 28 U.S.C. § 2255. *See* R. 23, Petitioner's Reply at 1. But elsewhere in the reply brief he characterizes the petition as a § 2254 petition. *See id.* Because Maury is a state prisoner, his petition is covered by § 2254. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241.

[2]Citations to the record are noted as "R." followed by the docket number and, when necessary, the page or paragraph number.

(7th Cir. 2015). The petitioner can overcome this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Because Maury has not presented clear and convincing evidence to rebut this presumption, this Court adopts the facts set forth by the Illinois Appellate Court on direct review. *See* R. 20, State Court Record Exh. A, Direct Review Opinion. The state court record lodged with this Court also supplements the facts. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 5 (2010); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002); *United States ex rel. Parish v. Hodge*, 73 F. Supp. 3d 895, 899 n.1 (N.D. Ill. 2014).

## I. Factual Background

### A. Arrest and Trial

#### 1. The Crimes

T.M. and A.M. lived with their grandmother, Catherine M., in 2003. *See* Direct Review Opinion ¶ 3. Sometime that year, Robert Maury—Catherine's boyfriend—moved into Catherine's home. *See id.* In the summer of 2003, Maury sexually assaulted T.M. (who was eleven years old at the time), by forcing her to engage in oral sex. *See id.* ¶ 11. On a separate occasion that summer, Maury beat A.M. (who was ten) and sexually assaulted him by forcing him to engage in oral sex. *See id.* ¶ 12. These assaults followed an attempt earlier that summer in which Maury had asked for oral sex from T.M. and she had run away to avoid it. *See id.* ¶ 11. T.M. testified that Maury made threats against her life if she told anyone about the assault, and A.M. testified that Maury had beaten him on prior occasions.

*See id.* ¶¶ 11-12. The children did not tell Catherine about the assaults and threats. *See id.*

### 2. Investigation and Arrest

The day after Maury assaulted her, T.M. reported the assault to her mother, Tashnia M., who did not live with the children. *See id.* ¶ 11. Tashnia confronted Catherine, who denied the accusations. *See id.* ¶ 13. Tashnia then called the police. *See id.* Detective Nolan of the Chicago Police Department began investigating the crimes in July 2003. *See id.* ¶ 14. He spoke with both children and arranged for them to do a "victim-sensitive interview" with Karen Stelnicki at the Chicago Children's Advocacy Center in August 2003. *See id.* He watched that interview through a two-way mirror but did not participate. *See id.* In February 2004, Maury was arrested. *See id.*

### 3. First Trial and Remand

The State first tried Maury for the assault of T.M. in the Circuit Court of Cook County. *See id.* ¶ 6. In 2006, a jury convicted Maury of predatory criminal sexual assault of T.M., and the court sentenced him to natural life imprisonment. *See id.* The case for assaulting A.M. continued to pretrial motions in 2008. *See id.* ¶ 7. On direct appeal in 2009, however, the Illinois Appellate Court vacated Maury's first conviction and remanded for a new trial because the trial court had allowed in too much prior-crimes evidence. *See id.* ¶ 8; *see also People v. Maury*, 982 N.E.2d 287 (Ill. App. Ct. Mar. 31, 2009) (Table).

### 4. Second Trial

The trial court agreed to join the two assault cases in 2009. *See* Direct Review Opinion ¶ 9. Shortly before the jury trial, Maury made a request to proceed *pro se*. *See id.* ¶ 10. The trial judge warned him of the seriousness of that step. *See id.* Maury met with his counsel, and at the next status hearing, "[Maury] agreed to continue to be represented by defense counsel."[3] *Id.* The court held a jury trial on both counts of predatory criminal sexual assault in 2011. *See id.* ¶ 11.

At the trial, T.M. and A.M. testified to the sexual assaults described above. *See id.* ¶¶ 11-12. Tashnia testified to her confrontation with Catherine and her interactions with the police. *See id.* ¶ 13. She also testified that the children received counseling from the Department of Child and Family Services (DCFS) with the help of Catherine Byrne, a DCFS child protection investigator. *See id.* Detective Nolan testified about his investigation. *See id.* ¶ 14. Antoinette Murray, a woman who had previously been sexually assaulted by Maury, gave prior-crimes evidence. *See id.* ¶ 15. She testified that Maury, who was her mother's boyfriend at the time, had repeatedly forced her to engage in oral sex at the age of fourteen or fifteen in 1986. *See id.* The State then rested. The trial court admonished Maury of his right to testify, and Maury elected not to testify. *See id.* ¶¶ 16, 63.

Maury's trial counsel called two witnesses. First, he called Catherine Byrne, who testified that she had visited the children on behalf of DCFS but had not

---

[3]Maury appears to have made another request to proceed *pro se* during pretrial motions in his original prosecution in 2008 for the assault of T.M. *See* Direct Review Opinion ¶ 29. But Maury equivocated in that request, saying that what he really wanted was more input into his counsel's decisionmaking. *See id.* Upon questioning by that trial judge, Maury agreed that it would be "unwise" to proceed *pro se*. *Id.*

provided counseling or other services. *See id.* ¶ 17. Then, he called John Crivellone, a private investigator, who testified about photographs he had taken of the defendant, including photographs of Maury's genitals that allegedly contradicted the children's testimony. *See id.* ¶ 18. During closing argument, the prosecutor commented on why the children did not remember certain collateral details of the assaults.[4] *See id.* ¶ 39. In January 2011, the jury convicted Maury on both counts. *See id.* ¶ 19.

### 5. Motions for New Trial

Shortly after the trial, Maury's trial counsel filed a motion for new trial under 725 ILCS 5/116-1 (1964). *See id.* ¶ 20. Maury filed his own *pro se* motion, in February 2011, for a new trial on the grounds of ineffective assistance of counsel. *See id.* He claimed that his counsel (1) failed to investigate Tashnia and the children's motives to lie; (2) failed to interview and call Catherine at trial; (3) did not listen to him throughout the case; and (4) forced him to decide prematurely whether to testify. *Id.* Under *People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984), the trial court held a hearing in February 2011 to determine if there was enough evidence of ineffective assistance to justify appointing Maury new counsel to argue his motion for new trial. *See id.* The trial court denied Maury's request for new counsel, denied Maury's *pro se* motion for new trial, and denied Maury's counseled motion for new

---

[4]The prosecutor said: "Well, you notice that everytime [sic] when [the victims] talk about what he did to them, when they talk about that, there's no inconsistencies. That's how the mind works. They remember being victimized. They remember what he did to them. They are not going to remember all of the collateral things that happened." Direct Review Opinion ¶ 39 (emphases omitted).

trial. *See id.* The court sentenced Maury to mandatory life imprisonment, and Maury filed notices of appeal through counsel. *See id.* ¶¶ 20-21.

## B. Direct Review in State Court

### 1. Direct Appeal to the Illinois Appellate Court

Maury presented three grounds for relief on direct appeal to the Illinois Appellate Court (he was represented by appellate counsel). R. 20, State Court Record Exh. B, Direct Appeal Br. at 2. First, Maury argued that the trial court denied him his Sixth Amendment right to proceed *pro se*. *See id.* Second, he argued that the prosecutor improperly bolstered the victims' testimony during the State's closing argument. *See id.* Third, Maury argued that the trial court improperly denied his request for new counsel to argue his motion for new trial after the *Krankel* hearing. *See id.* at 2, 22-23. The appellate court denied relief on all three grounds. Direct Review Opinion ¶ 66.

The appellate court rejected Maury's first ground for relief (that he wanted to proceed *pro se*) because Maury had forfeited this issue by failing to raise it in a motion for new trial. *See id.* ¶ 26; *see also People v. Herron*, 830 N.E.2d 467, 472-73 (Ill. 2005). The appellate court also held that there was no plain error because Maury never clearly asserted his right to proceed *pro se*. *See* Direct Review Opinion ¶¶ 29-31. Both times Maury requested to proceed *pro se*, he did not clearly and unequivocally waive the right to counsel, and he abandoned both requests soon after making them. *See id.* ¶¶ 30-31.

The appellate court held that Maury also forfeited his improper-bolstering claim by failing to object at trial and by failing to include it in his motion for a new trial. *See id.* ¶ 37; *see also Herron*, 830 N.E.2d at 472-73. The appellate court further held that there was no plain error because the prosecutor's remarks were premised on reasonable inferences from the record and also were an invited response to defense counsel's contentions in closing argument. *See* Direct Review Opinion ¶¶ 40-43.

The appellate court rejected Maury's third claim, holding that there was no error in not appointing new counsel after the *Krankel* hearing, even under *de novo* review. *See id.* ¶ 49. The appellate court rejected each of Maury's arguments. First, it held that trial counsel had effectively prepared for the trial and that the witnesses' alleged motives to lie were speculative. *See id.* ¶ 51. Second, it held that trial counsel employed a reasonable trial strategy in not calling Catherine and, even if that was a mistake, it was harmless. *See id.* ¶¶ 53, 55. Third, it held that trial counsel had listened to Maury's concerns and adequately prepared for trial. *See id.* ¶ 59. Fourth, it held that—although Maury was improperly forced to choose whether to testify before the start of the defense's case-in-chief—the error was harmless because the State presented overwhelming evidence and Maury was convicted at his first trial despite testifying. *See id.* ¶ 63. The appellate court denied relief on all counts. *See id.* ¶ 66.

**2. Petition for Leave to Appeal to the Illinois Supreme Court**

Next, Maury filed a counseled Petition for Leave to Appeal to the Illinois Supreme Court. *See* R. 20, State Court Record Exh. E, Direct Review PLA at 2. Maury raised two arguments in his petition. First, he argued that he had been denied his right to proceed *pro se*. *See id.* Second, he argued that the trial court improperly denied his right to new counsel after the *Krankel* hearing.[5] *See id.* He did not raise the improper-bolstering claim. *See id.* The Illinois Supreme Court denied leave to appeal. *See* R. 20, State Court Record Exh. F, Denial of Direct Review PLA at 1.

**C. State Postconviction Review**

**1. Postconviction in the Circuit Court of Cook County**

In May 2014, Maury filed a *pro se* petition for postconviction relief, 725 ILCS 5/122-1, in the Circuit Court of Cook County. R. 20, State Court Record Exh. G, Postconviction Appellate Opinion ¶ 4. The petition asserted five claims of ineffective assistance of counsel. *See id.* Maury claimed that trial counsel was ineffective by (1) failing to interview and call Brenda Forehand of DCFS, (2) failing to interview and call Karen Stelnicki of the Chicago Children's Advocacy Center, (3) failing to cross-examine Detective Nolan about bias against Maury, and (4) failing to properly contest the admission of prior-crimes evidence. *See id.* Maury also claimed his appellate counsel was ineffective for failing to raise those four issues on direct

---

[5]In the Petition for Leave to Appeal, Maury appears to have split his *Krankel* argument into three reasons for granting relief. *See* Direct Review PLA at 2. Two of those reasons concern errors in the trial court's decision not to appoint new counsel; the third calls attention to a split in the Illinois Appellate Courts. *See id.*

appeal. *See id.* The court dismissed the petition as "frivolous and patently without merit." *Id.*

### 2. Postconviction Appeal to the Illinois Appellate Court

Maury appealed all five claims to the Illinois Appellate Court, and counsel was appointed to represent him. *See id.* But then the appointed counsel filed a motion under *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), to withdraw from the representation on the grounds that the appeal was frivolous. *See id.* ¶ 5. The appellate court granted that motion. *See id.* ¶ 6. It summarily dismissed the appeal because it "f[ound] no issues of arguable merit" after reviewing the record, the *Finley* brief, and Maury's response. *Id.*

Appellate counsel's *Finley* brief discussed in detail why Maury's claims were meritless. *See* R. 20, State Court Record Exh. H, *Finley* Br. at 14-23. The brief argued that trial counsel made a valid strategic decision not to call Forehand because her testimony would not have helped Maury, defeating his first claim. *See id.* at 11. On his second claim, the brief argued that trial counsel made a valid strategic decision not to call Stelnicki because she could not have impeached T.M. on any material point and could not have helped establish a consent defense. *See id.* at 11-12. Next, the brief argued that Maury's claim that Detective Nolan was biased against him was pure speculation, undermining his third claim. *See id.* at 12. On Maury's fourth claim, the brief argued that trial counsel made an objectively reasonable attempt to exclude Antoinette's trial testimony. *See id.* at 12-13. And finally, the brief argued that appellate counsel did not have to raise every

conceivable argument and noted that Maury's claims for ineffective assistance of trial counsel were frivolous, undercutting his fifth claim. *See id.* at 13.

### 3. Petition for Leave to Appeal to the Illinois Supreme Court

Following the appellate affirmance of the postconviction-petition denial, Maury made an uncounseled Petition for Leave to Appeal to the Illinois Supreme Court. *See* R. 20, State Court Record Exh. J, Postconviction PLA at 1. He continued to raise the same five grounds. *See id.* The Supreme Court denied him leave to appeal. *See* R.20, Exh. K, Denial of Post-conviction PLA at 1.

### D. Federal Habeas Corpus Petition

After concluding state post-conviction review, Maury filed a petition for habeas corpus in federal district court in January 2017 and amended his petition in April 2017. *See* R. 1, Habeas Pet. at 1; Am. Habeas Pet. at 1. The amended habeas petition presents eight grounds for relief (although Maury characterizes them as seven grounds): three trial errors, four claims of ineffective assistance of trial counsel, and one claim of ineffective assistance of appellate counsel. *See* Am. Habeas Pet. at 5-48. Maury also seeks an evidentiary hearing on some of the grounds. *See id.* at 9, 47, 57.

The grounds presented in the petition are as follows:

1. The trial court denied Maury his Sixth Amendment right to proceed *pro se*. *See id.* at 5-6.

2. The prosecutor improperly bolstered the victims' testimony in closing argument, violating due process. *See id.* at 6.

3. The trial court improperly denied Maury his rights related to the post-trial *Krankel* hearing. This ground lacks some clarity. At some points, Maury describes it as denial of a right to counsel *after* the *Krankel* hearing; at other points, he describes it as a denial of a right to counsel *during* the *Krankel* hearing. *See id.* at 19-20. He appears to characterize this claim as arising from the Sixth Amendment. *See id.*

4. Maury's trial counsel was ineffective for failing to investigate or call Brenda Forehand. *See id.* at 20.

5. Maury's trial counsel was ineffective for failing to investigate or call Karen Stelnicki. *See id.* at 25-26.[6]

6. Maury's trial counsel was ineffective for failing to cross-examine Detective Nolan about alleged bias against Maury. *See id.* at 36.

7. Maury's trial counsel was ineffective for failing to properly contest the admission of prior-crimes evidence. *See id.* at 41.

8. Maury's appellate counsel was ineffective for failing to bring any of his ineffective assistance of trial counsel claims on direct appeal. *See id.* at 48.

The State answered the petition, and Maury filed a reply brief. R. 19, State's Answer at 1; Reply at 1.

## II. Legal Standard

A state petitioner seeking a writ of habeas corpus in federal court must first exhaust remedies available in state court. Antiterrorism and Effective Death

---

[6]Maury appears to characterize counsel's alleged failures regarding Forehand and Stelnicki as one ground for relief. *See* Am. Habeas Pet. at 23-24. But his claims really concern two separate instances of alleged ineffectiveness.

Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified at 28 U.S.C. § 2254(b)(1)(A) (2012)). The purpose of the exhaustion requirement is to "giv[e] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)). A habeas petitioner must therefore fully and fairly present his federal claims in one complete round of state appellate review before filing a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner fails to assert a federal claim properly at each level of state review, then he procedurally defaults that claim. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013).

A petitioner also procedurally defaults a claim when he fails to raise and preserve his federal claims in compliance with relevant state procedural rules, making the state-court default an adequate and independent state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). A federal court can only excuse procedural default if the petitioner can demonstrate cause and prejudice or that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See Wainwright v. Sykes*, 433 U.S. 72, 91 (1977) (cause and prejudice); *Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006) (same); *House v. Bell*, 547 U.S. 518, 536 (2006) (miscarriage of justice); *Coleman*, 501 U.S. at 750 (same).

If the petitioner successfully runs the gauntlets of exhaustion and procedural default, then the federal court can consider the merits of a habeas claim. But under AEDPA, a federal court cannot grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application" of Supreme Court precedent if it identified the correct legal rule but unreasonably applied the controlling law to the facts of the case. *See id.* at 407-08, 413. "This is a difficult standard to meet" because *unreasonable* means "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

## III. Analysis

### A. Claim One: Denial of Right to Proceed Pro Se

Maury has procedurally defaulted his claim that the trial court denied him his Sixth Amendment right to proceed *pro se*. True, a trial court generally cannot deny a criminal defendant the right to waive access to counsel and proceed *pro se*. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (establishing a Sixth Amendment

right to represent yourself). But failure to timely present an issue to the state courts is a procedural default preventing a federal court from reaching the merits. *See Coleman*, 501 U.S. at 750; *Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). The State correctly argues that Maury procedurally defaulted this claim by failing to present it in his motion for a new trial in state court. *See* State's Answer at 8-9. The Illinois courts consider an objection forfeited unless a criminal defendant both makes it contemporaneously at trial and includes it in his post-trial motion in the trial court. *See People v. Herron*, 830 N.E.2d 467, 472-73 (Ill. 2005). Maury failed to include the objection in his post-trial motion for new trial. *See* Direct Review Opinion ¶ 27. This procedural default bars review on the merits. *See Coleman*, 501 U.S. at 750; *Woods*, 589 F.3d at 373.

Maury argues that he did not procedurally default the claim because he did not present it to the Illinois Supreme Court. *See* Reply at 1-2. Maury actually *did* present the ground to the Illinois Supreme Court in his direct review Petition for Leave to Appeal. *See* Direct Review PLA at 2. But that was not enough: he was supposed to have presented the claim in the trial court, but he did not. It was not in his new-trial motion, and that failure led the Illinois Appellate Court to hold that the claim was forfeited. Direct Review Op. ¶ 26. The claim was procedurally defaulted.

Although a federal court can excuse a petitioner's procedural default for cause and prejudice, Maury has not argued that there was cause and prejudice, not in his petition or in his reply brief. *See Wainwright v. Sykes*, 433 U.S. 72, 91 (1977);

*Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006). This Court therefore declines to analyze whether Maury can excuse his default.

Even if this claim were not procedurally defaulted, it would fail on the merits. A federal court cannot grant habeas relief unless the state court issued a ruling "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). If the state court identified the correct legal test and applied it in an objectively reasonable manner, then this Court must defer to that holding. *See Williams*, 529 U.S. at 412-13. The Illinois Appellate Court reasonably applied the Sixth Amendment when it held that Maury did not clearly waive the right to counsel and that, even if he did, he later abandoned that waiver. *See* Direct Review Opinion ¶¶ 28-30. Maury equivocated repeatedly about whether he wanted to represent himself or whether he just wanted more input in his defense. *See id.* ¶ 29. The Supreme Court, in contrast, "indulge[s] in every reasonable presumption against waiver" and requires clear and unequivocal waivers. *Brewer v. Williams*, 430 U.S. 387, 404 (1977). And even if a defendant does make an unequivocal waiver of counsel, he can abandon that waiver by accepting counsel. *See Cain v. Peters*, 972 F.2d 748, 750 (7th Cir. 1992). If Maury did waive the right to counsel in the trial court, then he abandoned that waiver when he agreed to continue working with counsel. *See* Direct Review Opinion ¶¶ 29-31. The state court reasonably applied federal law.

## B. Claim Two: Closing Argument Remarks

Maury failed to exhaust his claim that the prosecutor improperly bolstered the victims' testimony in closing argument. A federal court cannot grant a state prisoner habeas relief unless he has exhausted his remedies in state court. *See* 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, a petitioner must fully and fairly present a claim in one full round of review in the state courts, including petitioning for discretionary review in the state supreme court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Benik*, 471 F.3d at 814-15. Maury did include this ground in his direct appeal to the Illinois Appellate Court. *See* Direct Appeal Br. at 2. But he failed to include it in his Petition for Leave to Appeal to the Illinois Supreme Court on direct review. *See* Direct Review PLA at 2. Maury has thus failed to exhaust this claim, barring this Court from reaching its merits.[7]

Maury has not established cause and prejudice to overcome his lack of exhaustion. Maury argues that his cause is that his appellate counsel was ineffective in failing to raise the issue in his Petition for Leave to Appeal. *See* Reply at 4. To establish cause based on ineffective assistance of counsel, Maury needs to show that his appellate counsel was objectively ineffective. *See Murray*, 477 U.S. at 488; *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984) (establishing a two-part objective test for ineffective assistance of counsel). Criminal defendants do not,

---

[7]Ordinarily, a mixture of exhausted and unexhausted claims in one petition precludes review of the petition. *See Lisle v. Pierce*, 832 F.3d 778, 785 (7th Cir. 2016) (citing *Rose v. Lundy*, 455 U.S. 509 (1982)). District courts can hold a petition in abeyance while a petitioner returns to state court to exhaust a claim. *See Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). But Maury's opportunities to exhaust this claim are long past. And it is unnecessary to have Maury amend his petition to remove unexhausted claims because this Court denies Maury relief on all grounds.

however, have a right to counsel—or the derivative right to effective assistance —on discretionary review in a state supreme court. *See Ross v. Moffitt*, 417 U.S. 600, 614-15 (1974). Thus, any claim that ineffective assistance excuses Maury's failure to exhaust must fail. What's more, Maury cannot demonstrate ineffective assistance because the choice not to include the improper-bolstering claim in the Petition for Leave to Appeal was a reasonable appellate strategy based on the strengths of available claims. *See McAfee v. Thurmer*, 589 F.3d 353, 356 (7th Cir. 2009) (noting that it is virtually impossible to challenge strategic decisions). And Maury cannot establish "actual prejudice," which requires that an error—judged in the context of the whole proceeding—"so infected" the proceedings that the result violates due process. *United States v. Frady*, 456 U.S. 152, 168-69 (1982) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). Given the weakness of this claim of error and the strong evidence against Maury, there was no actual prejudice.

Maury also procedurally defaulted the claim by failing to make a contemporaneous objection at trial. *See* Direct Review Opinion ¶ 37 (citing *Herron*, 830 N.E.2d at 472-73 (requiring contemporaneous objection and presentation in post-trial motion)). Maury even conceded forfeiture on direct review. *See id.* Maury seems to change gears in his habeas petition to argue that the failure to object at trial was not a procedural default. *See* Reply at 4. But Illinois law requires defendants to object contemporaneously on pain of forfeiting the issue, and that is precisely what procedural default is. *See Herron*, 830 N.E.2d at 472-73. Maury does

not argue that there was cause and prejudice for this default. *See* Reply at 4. The Court will thus not address whether that default was somehow excused.

Finally, this Court cannot grant Maury relief on this ground because the Illinois Appellate Court reasonably construed federal law on direct review. *See* § 2254(d)(1); *Williams*, 529 U.S. at 412-13. Improper bolstering comes in two forms: (1) the prosecutor expresses his or her personal opinion on a witness's credibility, and (2) the prosecutor implies that facts not before the jury prove the victim is credible. *See United States v. Flournoy*, 842 F.3d 524, 529 (7th Cir. 2016). Outside of those two categories, however, the prosecutor has broad discretion to make inferences from the record. In this case, as the state court held, the prosecutor simply made reasonable inferences from the record and from the fact that the victims were children.[8] *See* Direct Review Opinion ¶ 39. That was an objectively reasonable application of federal law.

### C. Claim Three: Shortcomings in Post-Trial *Krankel* Hearing

In his amended habeas petition, Maury appears to make two arguments for relief based on failures in the post-trial *Krankel* hearing. First, he argues that the court denied him the right to counsel *during* the *Krankel* hearing. *See* Am. Habeas Pet. at 18. Second, he argues that the trial court improperly denied him new counsel *after* the *Krankel* hearing (that is, that the *Krankel* hearing arrived at the wrong result). *See id.* at 19. Neither argument merits relief. The first is unexhausted, procedurally defaulted, and would require making new federal law on habeas

---

[8]For the prosecutor's statement and its context, see Direct Review Opinion ¶¶ 39-41 and note 5, *supra*.

review. The second was reasonably adjudicated in the state courts and would require announcing new federal law on habeas review.

### 1. Failure to Appoint Counsel for *Krankel* Hearing

The most in-depth *Krankel* argument Maury makes is that he was denied a Sixth Amendment right to counsel *during* the *Krankel* hearing. *See* Am. Habeas Pet. at 18-19. Illinois courts hold *Krankel* hearings (named after the Illinois Supreme Court case that created this type of hearing) after a criminal trial when the defendant asks for a new trial based on ineffective assistance of trial counsel. *See People v. Krankel*, 464 N.E.2d 1045, 1049 (Ill. 1984); *People v. Moore*, 797 N.E.2d 631, 637-38 (Ill. 2003). The purpose of the hearing is to determine if there is enough of a factual basis supporting the defendant's claim to justify appointing new counsel for a motion for new trial. *See Moore*, 797 N.E.2d at 637-38. As is the norm in *Krankel* proceedings, Maury did not have counsel in the hearing itself. *See* R. 20, State Court Record Exh. L, Trial Tr. at X 57.

Maury has both procedurally defaulted and failed to exhaust this claim. On direct appellate review, Maury argued only that the trial court erred by refusing to appoint counsel *after* the *Krankel* hearing (in other words, that the trial court got the *result* of the *Krankel* hearing wrong). *See* Direct Review Br. at 2; Direct Review PLA at 2. He never asked for relief based on denial of counsel *during* the *Krankel* hearing itself. Maury thus procedurally defaulted this claim by failing to include it in his either his motion for new trial or his brief on direct review. And he failed to exhaust it because he did not present it to any state court whatsoever. *See* Direct

Review Br. at 2; Direct Review PLA at 2; Postconviction Appellate Opinion at 1-3; Postconviction PLA at 1-4. Without a full round of review in the state courts, this Court cannot address the merits of the claim. *See O'Sullivan*, 526 U.S. at 845; *Richardson v. Lemke*, 745 F.3d 258, 264 (7th Cir. 2014). Maury has not argued that he has cause and prejudice to excuse the procedural default or the lack of exhaustion, so this Court considers the default and the lack of exhaustion unexcused.

Even if this Court could look at the merits of this claim, it could not provide relief. There is no clearly established federal law that a criminal defendant has a Sixth Amendment right to counsel in a *Krankel*-type proceeding. *See United States ex rel. Payton v. Pfister*, 2015 WL 5829749, at *14 (N.D. Ill. Oct. 1, 2015) (holding that *Krankel* proceedings are a matter of state law, not Sixth Amendment right). The federal courts cannot establish new rules of constitutional law on habeas review. *See Teague v. Lane*, 489 U.S. 288, 315-16 (1989). This Court cannot provide Maury relief regardless of exhaustion and procedural default.

### 2. Failure to Appoint Counsel After *Krankel* Hearing

Maury's less well-developed *Krankel* argument is that he was wrongfully denied new counsel *after* the *Krankel* hearing—that is, that the trial court reached the wrong result and failed to appoint new counsel that Maury deserved. Maury has exhausted that claim by presenting it at all levels on direct review, and he has not procedurally defaulted it. *See* Direct Review Br. at 2; Direct Review PLA at 2.

It is not clear, however, that this claim is based on a *federal* right, which is what is required for federal habeas relief. *See* 28 U.S.C. § 2241(c)(3) (state petitioner's habeas petition must be based on federal law). Some courts have speculated that the Sixth Amendment might require a trial court to appoint new counsel for a defendant who moves for a new trial based on ineffective assistance of counsel. *See Johnston v. Mizell*, 912 F.2d 172, 174-77 (7th Cir. 1990); *United States ex rel. Sumner v. Washington*, 840 F. Supp. 562, 577 (N.D. Ill. 1993). Those courts have not, however, outright held that the specific right actually exists, and they have declined to presume that trial counsel are not competent to argue that the defendant should get a new trial based on ineffective assistance. *See Johnston*, 912 F.2d at 174-77. The most on-point case, moreover, held that there is no Sixth Amendment right to a certain outcome from *Krankel* hearings. *See Payton*, 2015 WL 5829749, at *14. Given the lack of foundation for a federal claim of right, granting the petitioner relief would require creating new federal law on habeas review, which this Court cannot do. *See Teague*, 489 U.S. at 315-16.

Even if *Teague* does not bar ruling on the merits, the Illinois Appellate Court reasonably applied federal law on direct review. *See* § 2254(d)(1); *Williams*, 529 U.S. at 412-13. The appellate court rejected on the merits all four reasons that Maury gave for why he should have had new counsel to argue his motion for new trial. *See* Direct Review Opinion ¶¶ 51-63. The state court reasonably applied federal law in holding that Maury's trial counsel was not ineffective because he was well-prepared and made reasonable strategic decisions and in holding that any error was

harmless. *See id.* ¶¶ 51, 53, 58, 61-63. This Court will not disturb the state court's reasonable application of federal law.

### D. Claim Four: Ineffective Assistance of Trial Counsel

Maury makes four claims that he received ineffective assistance of trial counsel. He has procedurally defaulted the first three claims, and the Illinois Appellate Court reasonably applied federal law on all four claims in postconviction review. This Court therefore denies Maury relief on all four claims. The Court will address the first three claims together because of the similarity of the issues.

### 1. Failure to Call Forehand and Stelnicki, and Failure to Cross-Examine Detective Nolan

Maury procedurally defaulted three claims for ineffective assistance of trial counsel. By failing to attach affidavits to his postconviction petition, he defaulted the claims that trial counsel should have (1) investigated and called Brenda Forehand of DCFS, (2) investigated and called Karen Stelnicki of the Chicago Children's Advocacy Center, and (3) cross-examined Detective Nolan about alleged bias against Maury.

Illinois requires that state prisoner seeking postconviction review to attach "affidavits, records, or other evidence supporting [his] allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (1964). The failure to attach affidavits or other evidence or to explain their absence is "fatal" to a postconviction petition. *People v. Collins*, 782 N.E.2d 195, 198 (Ill. 2002) (quoting *People v. Turner*, 719 N.E.2d 725, 730 (Ill. 1999)) (affidavits); *see also People v. Delton*, 882 N.E.2d 516, 522 (Ill. 2008) (record evidence). There might be an exception if the petitioner

could not have realistically attained any evidence to attach. *See Collins*, 782 N.E.2d at 199 (citing *People v. Williams*, 264 N.E.2d 697, 698 (Ill. 1970)). But if the petitioner can attach trial transcripts or an affidavit of his own personal knowledge, then he must do so. *See People v. Hall*, 841 N.E.2d 913, 919 (Ill. 2005). If he cannot, then he must explain why. *See Collins*, 782 N.E.2d at 198. Failure to attach affidavits to a postconviction petition is a procedural default barring federal habeas review. *See Thompkins v. Pfister,* 698 F.3d 976, 986-87 (7th Cir. 2012).

Maury procedurally defaulted all three claims because he failed to attach affidavits or record evidence—or explain their absence—to support any of these claims. In fact, the sole evidence Maury attached to his petition were some affidavits from Catherine M. in support of a claim that he chose not to present in his federal habeas petition. *See Finley* Br. at 10-11. Maury could have attached an affidavit detailing his own memories of his counsel's actions and statements concerning all three claims and the reasons he thought Detective Nolan was biased against him. At a minimum, he should have explained why he could not attach such affidavits. The failure to include affidavits or record evidence or explain their absence is a procedural default barring review on the merits. Maury has made no argument that he has cause and prejudice to excuse these defaults, so this Court considers the defaults unexcused.

What's more, this Court cannot second-guess the Illinois Appellate Court's reasonable application of federal law on postconviction review. *See* § 2254(d)(1); *Williams*, 529 U.S. at 412-13. The state court rejected all of Maury's claims on the

merits. *See* Postconviction Appellate Opinion ¶ 6 ("[W]e find no issues of arguable merit."); *see also Harrington v. Richter*, 562 U.S. 86, 99 (2011) (presumption that state courts have resolved issues on the merits); *Harris v. Reed*, 489 U.S. 255, 265 (1989) (same). Although the state court did not include the reasoning behind its dismissal, it is appropriate to look to the whole record—including the *Finley* brief—to determine if the state court reasonably applied federal law. *See Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009); *Williams v. Washington*, 59 F.3d 673, 678 n.3 (7th Cir. 1995).

On postconviction review, the Illinois Appellate Court reasonably applied federal law to Maury's claim about Forehand. As the *Finley* brief argued, trial counsel was not ineffective because (1) he made a strategic choice not to call Forehand after speaking with her, and (2) he introduced evidence through other means of the fact that DCFS did not provide the children counseling, which was the only thing Forehand could have testified to. *See Finley* Br. at 16. This is a reasonable application of the *Strickland* standard. Counsel's decision not to call a witness, made after an investigation, was an objectively reasonable trial strategy. *See McAfee*, 589 F.3d at 356. And Maury suffered no prejudice because trial counsel presented other evidence that the DCFS did not provide counseling. The Illinois Appellate Court reasonably applied federal law to this claim in postconviction review.

The Illinois Appellate Court also reasonably applied federal law to Maury's claim about Stelnicki. Maury argues that Stelnicki could have helped establish that

"the assault at issue was either consensual or did not occur, or that T.M. was being dishonest." Reply at 6. But as the *Finley* brief correctly argued, based on Stelnicki's testimony at the first trial, Stelnicki would not have contradicted T.M.'s testimony or proven her dishonest about being too afraid to seek help on the night of the assault. *See Finley* Br. at 17. What's more, even if Stelnicki had contradicted T.M. and shown her to be a "willing accomplice," it would have been irrelevant because consent is not a defense to predatory criminal sexual assault. *See id.* at 18; *see also People v. Douglas*, 886 N.E.2d 1232, 1238-39 (Ill. App. Ct. 2008) (no consent defense). Again, this is a reasonable application of the *Strickland* standard. Trial counsel made a reasonable decision, after reviewing the record of the first trial, not to call Stelnicki. *See McAfee*, 589 F.3d at 356. And Maury suffered no prejudice because Stelnicki's testimony could not have helped him establish a defense. In fact, Stelnicki testified at the first trial and Maury was convicted anyway. The state court's application of federal law to this claim was not unreasonable.

Finally, the Illinois Appellate Court reasonably applied federal law to Maury's claim about Detective Nolan. As the *Finley* brief argues, there was no ineffective assistance because Maury puts forward only a conclusory argument that Detective Nolan was biased against him. *See Finley* Br. at 317. It is not objectively unreasonable for counsel to decide not to cross-examine a witness about bias when there is no basis in fact for believing the witness is biased. And Maury has suffered no prejudice because he can point to no factual allegations that the failure to

question the detective led to any harm. Thus, there is no basis to overturn the state court's rejection of Maury's claim about Detective Nolan.

## 2. Failure to Properly Contest Prior-Crimes Evidence

The Illinois Appellate Court also reasonably applied federal law on postconviction review when it held that Maury's trial counsel was not ineffective in contesting prior-crimes evidence.[9] *See* § 2254(d)(1); *Williams*, 529 U.S. at 412-13. As the *Finley* brief points out, trial counsel made his best efforts to exclude prior-crimes evidence. *See Finley* Br. at 19. In fact, trial counsel got the prior-crimes testimony of three out of four potential witnesses excluded. *See id.* And he made exactly the same argument concerning the fourth witness (Antoinette) that Maury made in postconviction review: that too much time had passed since the prior crime. *See id.* That is objectively reasonable attorney representation under *Strickland*.[10] What's more, it is not clear that Maury could establish prejudice because, even without Antoinette's testimony, the children's testimony probably would have been enough to convict him. *See* Direct Review Opinion ¶ 55 (noting the "overwhelming" evidence against Maury). Thus, § 2254(d) precludes relief on this claim.

---

[9]The *Finley* brief and the State's habeas brief do not argue that this ground is procedurally defaulted. *See* State's Answer at 10-11; *Finley* Br at 19. They do not explain why. But it might be because Maury's allegations could be substantiated from the trial record, without the need for verifying affidavits. It is unclear from the appellate record, however, whether Maury actually attached trial transcripts to his postconviction motion in state court.

[10]In addition, federal courts are discouraged from relitigating state law arguments counsel made—such as whether prior-crimes evidence was admissible under state evidentiary rules—which state courts rejected. *See Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016); *Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010).

### E. Claim Five: Ineffective Assistance of Appellate Counsel

The Illinois Appellate Court reasonably applied federal law on post-conviction review in holding that Maury's direct-review appellate counsel was not ineffective in choosing not to raise ineffective assistance of trial counsel claims on direct review.[11] *See* § 2254(d)(1); *Williams*, 529 U.S. at 412-13. As the *Finley* brief argued, it is not constitutionally ineffective for appellate counsel to refuse to make arguments he finds meritless. *See Finley* Br. at 311-12; *Jones v. Barnes*, 463 U.S. 745, 750-51 (1983); *Martin v. Evans*, 384 F.3d 848, 851-52 (7th Cir. 2004). The only exception is if counsel made an objectively incorrect assessment of a claim's merit. *Jones*, 463 U.S. at 750-51; *Martin*, 384 F.3d at 851-52.

The appellate court reasonably applied the *Strickland* standard in postconviction review. As noted in Section III.D., Maury's claims for ineffective assistance are meritless. Appellate counsel's decision not to raise meritless claims on appeal is not objectively unreasonable. And Maury cannot demonstrate prejudice because his meritless claims about trial counsel would not have gotten him relief in direct review. Here again, § 2254(d) bars relief.

### IV. No Certificate of Appealability

As a final matter, this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2254 Cases in the United States District Courts, Rule 11 (2010); *see also* 28 U.S.C.

---

[11]As with the fourth claim concerning trial counsel, neither the *Finley* brief nor the State argues for procedural default based on lack of affidavits. *See* State's Answer 10-11; *Finley* Br. at 22-23. That may be because Maury's claim could be substantiated from the record without a need for a verifying affidavit.

§ 2253(c). To obtain a certificate of appealability, "the applicant [must] ma[ke] a substantial showing of the denial of a constitutional right." § 2253(c)(2). To do this, the petitioner must show that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For the reasons discussed above, Maury has not made a substantial showing of the denial of a constitutional right. Reasonable jurists would not debate whether the issues Maury presents in his petition should have been resolved differently, nor would they conclude that Maury deserves encouragement to proceed further. *See id.*; *Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). The Illinois Appellate Court's decisions on direct and postconviction review were well within the deference owed to state courts under AEDPA. This Court therefore declines to issue a certificate of appealability.

## V. Conclusion

For the reasons given above, Maury's amended habeas petition is denied on all grounds, and the Court declines to issue a certificate of appealability.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: November 29, 2017